Filed 9/6/23  In re C.O. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.O. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN & FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.C.,<br><br>    Defendant and Appellant. | E081064<br><br>(Super.Ct.Nos. J290300, J290301 & J290302)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.  INTRODUCTION

M.C. (Mother) is the biological mother and A.O. (Father) is the presumed father of I.A., G.O., C.C., and B.G.C.  Plaintiff and respondent San Bernardino County Children and Family Services (CFS) filed dependency petitions pursuant to Welfare and Institutions Code[1] section 300 et. seq. on behalf of all four children.  Mother appeals from an order terminating her parental rights as to I.A., G.O., and C.C.[2]

On appeal, the only claim asserted by Mother is that the order terminating her parental rights must be conditionally reversed because CFS failed to comply with its duty of inquiry under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes.  Specifically, Mother claims that CFS failed to interview all known extended family members regarding the children's potential Indian ancestry as required by section 224.2, subdivision (b).  We conclude that section 224.2, subdivision (b) does not apply to the facts of this case and affirm the order terminating Mother's parental rights.

## II.  FACTS AND PROCEDURAL HISTORY

Mother is the biological mother and Father is the presumed father of I.A., G.O., C.C., and B.G.C.  On August 20, 2021, CFS obtained a detention warrant pursuant to

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] While the dependency proceedings for all four children were conducted together for a period of time, B.G.C. was eventually placed separately from her older siblings and is not included in the order challenged in this appeal.

section 340 for all three children in response to an ongoing history of referrals[3] and took the children into protective custody that same date. During the process of taking the children into protective custody, social workers asked Mother, Father, and the maternal grandmother whether they had knowledge of the children's potential Native American ancestry, and all three denied any such knowledge.

On August 24, 2021, CFS filed dependency petitions on behalf of I.A., G.O. and C.C. pursuant to section 300, subdivisions (b)(1) and (j), alleging Mother's and Father's inability to protect, inability to provide, and abuse of siblings as bases for jurisdiction. At the detention hearing, Mother and Father both denied Native American ancestry when questioned by the juvenile court. Both parents also completed ICWA-020 forms by indicating they had no knowledge of potential Native American ancestry. Finally, both parents completed "Family Find and ICWA Inquiry" forms, which identified maternal grandmother and an uncle as relatives.

On October 14, 2021, the juvenile court held a contested jurisdictional and dispositional hearing on the petitions. At the time, CFS reported that social workers made a follow-up ICWA inquiry with both Mother and Father, but both denied knowledge of any potential Native American ancestry. The juvenile court sustained the allegations of each petition and ordered the children removed from Mother and Father.

---

[3] The family was already known to CFS because Mother's parental rights had already been terminated as to two other children. Additionally, Father had already been given sole custody of I.A., G.O., and C.C. as the result of a prior dependency proceeding in which Mother was unable to reunify with the children.

While these dependency proceedings were pending, Mother gave birth to a fourth child, B.G.C. CFS filed a petition pursuant to section 300 on behalf of B.G.C., alleging abuse of B.G.C.'s siblings as one of several bases for jurisdiction. CFS again interviewed Mother and Father, and both, again, initially denied any knowledge of potential Native American ancestry. However, when asked by the juvenile court whether they had potential Native American ancestry at the detention hearing for B.G.C., Father responded, "Yes." Parents also completed new ICWA inquiry forms. This time, both parents provided new information by identifying a grandfather and providing contact information for the children's grandfather. Despite this new information, the juvenile court made a finding that ICWA did not apply.

The juvenile dependency proceedings for the three children subject of this appeal and B.G.C. proceeded together for a period of time. The juvenile court scheduled and held a contested six-month review hearing for the three children at the same time as a contested jurisdictional and dispositional hearing for B.G.C. The juvenile court also scheduled and held a placement hearing pursuant to section 361.3 for the three children at the same time as a continued contested jurisdictional and dispositional hearing for B.G.C. In its jurisdictional and dispositional report for B.G.C., CFS reported that it made another inquiry with Father regarding potential Native American ancestry following the detention hearing for B.G.C. and that, this time, Father denied any such ancestry. Ultimately, B.G.C. was placed separately from her older siblings and is not included as part of this appeal.

4

On April 6, 2023, the juvenile court held a contested permanency planning hearing pursuant to section 366.26. With respect to ICWA compliance, the section 366.26 report submitted by CFS simply stated that "the Indian Child Welfare Act does not apply," and it did not detail that any further efforts had been taken by CFS to make any inquiries regarding the children's potential status as Indian children. The juvenile court terminated Mother's and Father's parental rights and selected a permanent plan of adoption for the children. Mother appeals from the order terminating her parental rights as to I.A., G.O., and C.C.

## III. DISCUSSION

On appeal, the only claim of error raised by Mother is that CFS failed to comply with its initial duty of inquiry under ICWA and the related California statutes. Specifically, Mother argues that CFS failed to comply with a mandatory duty imposed by section 224.2, subdivision (b), which purportedly required CFS to contact all identified extended family members in order to obtain information regarding the children's potential status as Indian children. We disagree.

A. *General Legal Principles and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) "To determine whether ICWA applies to a dependency proceeding, the juvenile court and [the relevant

5

social services agency] have 'an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child.' " (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 566.)

"This duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Dominick D.*, *supra*, 82 Cal.App.5th at p. 566.) " 'The duty of initial inquiry applies in every dependency proceeding' " and, at a minimum, requires asking every participant in the proceeding " ' "whether the participant knows or has reason to know that the child is an Indian child." ' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 597.) "[I]f that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [relevant social services agency] 'shall make *further inquiry* regarding the possible Indian status of the child" (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052), which may include interviewing extended family members, contacting the Bureau of Indian Affairs, contacting the State Department of Social Services, contacting pertinent tribal entities, or contacting other persons who may be reasonably expected to have relevant information (*In re K.H.*, at pp. 597-598). "[The relevant social services agency] is required to document its ICWA inquiry efforts throughout the proceedings, beginning with the petition . . . . All filings thereafter must include 'a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status.' " (*In re Dominick D.*, at p. 566; *In re D.S.*, at p. 1049.)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the relevant social service agency's inquiry and due diligence was

" 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050; *In re Dominick D.*, *supra*, 82 Cal.App.5th at p. 566.) A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; *In re Austin J.*, at p. 885 [implicit finding that social workers fulfilled their duty of inquiry is reviewed for substantial evidence].)

B. *Substantial Evidence Supports the Trial Court's ICWA Finding*

On appeal, Mother claims that the record does not show CFS fulfilled its initial duty of inquiry under section 224.2. Mother contends that under section 224.2, subdivision (b), CFS had a mandatory duty to contact every known extended family member as part of its initial inquiry, and the failure to do so requires reversal. As relevant here, section 224.2, subdivision (b), provides: "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 . . . , the county welfare department . . . has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking . . . extended family members . . . whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) We disagree with Mother's contentions.

It is undisputed that the children in this case were taken into protective custody pursuant to a warrant issued under section 340. This court has repeatedly concluded that

7

section 224.2, subdivision (b) "requires a county welfare department to ask extended family members about a child's Indian status only if the department has taken the child into temporary custody under section 306." (*In re Robert F.* (2023) 90 Cal.App.5th 492, 504 (*Robert F.*), review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-681, review granted July 26, 2023, S280572; *In re Andres R.* (2023)___Cal.App.5th___(Aug. 23, 2023, E079972) [2023 Cal.App.Lexis 638]; but see *In re Delila D.* (2023) 93 Cal.App.5th 953 [declining to follow *Robert F.*].) As we explained in *Robert F.*, our interpretation of section 224.2, subdivision (b), is supported by the plain meaning of the statutory text; consideration of the statutory provision in context with the entire statutory scheme; the practical and reasonable application of the statute; and the statute's legislative history. (*Robert F.*, at pp. 500-504.)

Further, even assuming section 224.2, subdivision (b) might apply, multiple recent decisions by the Court of Appeal have rejected the interpretation of the statute advanced by Mother, concluding that courts should not interpret statutes literally if it would lead to "absurd" results and endorsing the view that "making an *initial* and *further* ICWA inquiry of every member of a child's extended family . . . , plus every other person who has an interest in the child—is absurd at best and impossible at worst." (*In re Ezequiel G.*(2022) 81 Cal.App.5th 984, 1004-1006; *In re K.H.* (2022) 84 Cal.App.5th 566, 603 [interpreting section 224.2, subdivision (b) as requiring contacting all family members in all cases as being "absurd"]; *In re E.W.* (2023) 91 Cal.App.5th 314, 321-322 [endorsing view that compliance with the literal language of section 224.2, subdivision (b) is " 'absurd at best and impossible at worst' "].) Thus, we are unpersuaded by Mother's

argument that section 224.2, subdivision (b) required CFS to interview every known family member in this case in order to comply with its initial duty of inquiry.

It is true that CFS is not absolved of its obligation to make an initial inquiry simply because section 224.2, subdivision (b) does not apply. As we explained in *Robert F.*, "[c]ase-specific circumstances may require the department to interview extended family members" because section 224.2, subdivision (a) still imposes a general " 'affirmative and continuing' " duty of inquiry in all cases. (*Robert F. supra*, 90 Cal.App.5th at p. 504.) Thus, a parent's affirmative claim of Native American ancestry may suggest the need to conduct additional investigation as part of CFS's initial inquiry. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 322 [The mother's statement of possible Indian ancestry and identification of the grandfather "was sufficient to require further inquiry," which "should have, at minimum, included interviews with [the mother's] extended family members."].)

However, Father subsequently denied Native American ancestry when CFS followed up shortly after his initial claim. This is substantial evidence upon which the juvenile court could rely to conclude that CFS adequately fulfilled its duty of inquiry. (See *In re E.W.*, *supra*, 91 Cal.App.5th at p. 322 [The juvenile court's finding of ICWA compliance was supported by substantial evidence despite the mother's initial claim of possible Native American ancestry, where mother "made repeated subsequent representations that she lacked any Native American ancestry."].) Thus, we conclude that substantial evidence supports the juvenile court's implied finding that CFS fulfilled its initial duty of inquiry. Absent error, we need not consider the issue of prejudice.

9

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                                    J.

We concur:

CODRINGTON _____
              Acting P. J.


MENETREZ _____
              J.

10